UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DIANNA LYSIUS,

                  Plaintiff,

     -against-

NEW YORK CITY LAW DEPARTMENT,
PHILIPPE KNAB,[1] HOLLY ONDAAN,
CARMELYN P. MALALIS, ZOEY CHENITZ,
NERMINA ARNAUD, SAPNA RAJ,
JOHN B SPOONER, CITY OF NEW YORK, and
NEW YORK CITY COMMISSION ON
HUMAN RIGHTS,

               Defendants.
----------------------------------------------------------------X

                            **REPORT & RECOMMENDATION**
                             **21 CV 7001 (DG)(LB)**

**BLOOM, United States Magistrate Judge:**

     Plaintiff Dianna Lysius brings this *pro se* civil rights action under 42 U.S.C. § 1983 alleging that defendants violated her constitutional rights under the First, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments. Plaintiff seeks monetary and injunctive relief. Defendants City of New York, New York City Law Department, New York City Commission on Human Rights ("Commission"), Philippe Knab, Carmelyn P. Malalis, Zoey Chenitz, Nermina Arnaud, Sapna Raj, and John B. Spooner move to dismiss plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[2] The Honorable Diane Gujarati referred the motion to me for a Report and Recommendation in accordance with 28 U.S.C. §

---

[1] Defendant Knab's name is misspelled in plaintiff's Amended Complaint as "Knabb." The Clerk of Court is respectfully directed to amend the caption to reflect the correct spelling.

[2] Defendant Holly Ondaan has not appeared in this action. It is respectfully recommended that plaintiff's claims against defendant Ondaan should be dismissed *sua sponte* because Ondaan is a private individual and § 1983 claims can only be brought against state actors. See Mitchell v. Connecticut Region 14 Dist. Prob. Ct., No. 14-CV-630, 2015 WL 4094188, at *6 (D. Conn. July 7, 2015) ("Despite the fact that some of the non-state-actor defendants have not appeared in this action or filed a motion to dismiss, the Court has authority *sua sponte* to dismiss the claims against them on the ground that they are manifestly meritless.") (citing McCluskey v. New York State Unified Court Sys., 442 F. App'x. 586, 588 (2d Cir. 2011) (summary order)); Wang v. Miller, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order) (affirming dismissal of § 1983 claim against defendant who was not a state actor).

636(b). For the reasons set forth below, it is respectfully recommended that defendants' motion should be granted and plaintiff's Amended Complaint should be dismissed.[3]

## BACKGROUND

Plaintiff brings this case against nearly every individual and entity involved in a proceeding before the New York City Commission on Human Rights. The Commission found that plaintiff, a landlord, discriminated against defendant Ondaan, plaintiff's tenant at the time, by sending Ondaan messages threatening to report her to immigration authorities. Rather than accept the Commission's finding—reached after a two-day administrative hearing and Commission review—plaintiff brings this federal civil rights case alleging defendants perpetrated a vast immigration fraud scheme on behalf of Ondaan. Despite attaching 735 pages of exhibits to her Amended Complaint and 1583 pages to her opposition to defendants' motion to dismiss, plaintiff fails to plausibly allege the violation of her constitutional rights. Rather, the documents on which plaintiff relies undercut and discredit her claims, showing instead that plaintiff received due process throughout the Commission proceeding. Plaintiff put on her case, her arguments and evidence were considered, and the Commission found she had discriminated against Ondaan. Plaintiff's dissatisfaction with the outcome of the Commission proceeding does not plausibly allege a violation of her constitutional rights.

### A. The Commission and State Court Proceeding

On February 5, 2018, the Law Enforcement Bureau ("Enforcement Bureau") of defendant New York City Commission on Human Rights filed a complaint alleging that plaintiff violated the New York City Human Rights Law ("NYCHRL") by sending defendant Ondaan a series of

---

[3] The Court is troubled by plaintiff's numerous references to self-harm. See, e.g., ECF No. 31 ("Opp.") at 21 ("I ask the Courts to DENY the Motion to Dismiss, DENY the defense of Qualified Immunity, and Grant the Injunctive Relief before I commit suicide."). Plaintiff is urged to seek counseling.

discriminatory text messages in January 2018 threatening to report her to immigration authorities because of her perceived immigration status (the "January 2018 messages").[4] ECF No. 19 ("Am. Compl.") at 8; ECF No. 19-3 at 37-42; ECF No. 28-4, ("Mackie Decl., Ex. B") at 6.[5] Plaintiff and Ondaan apparently had an unremarkable relationship until Ondaan stopped paying rent in October 2017. Plaintiff commenced an eviction proceeding against Ondaan in housing court shortly thereafter. Mackie Decl., Ex. A at 3-4. While the housing court case was pending, plaintiff allegedly sent Ondaan the January 2018 messages, including: "I REPORTED YOU TO IMMIGRATION BOO THEY KNOW IM THE LANDLORD TO PROVIDE THEM KEYS COME DIRECTLY TO YOU[,]" "HAVE MY MONEY OR IM CALLING ICES [sic] THAT

---

[4] Under the Commission process, "any person aggrieved by an unlawful discriminatory practice or an act of discriminatory harassment," or the Commission itself, may file a complaint alleging a violation of the NYCHRL. N.Y.C. Admin. Code § 8-109(a), (c). The respondent against whom discrimination is alleged may then file an answer. Id. § 8-111(a). In cases that are not initiated by the Commission, a probable cause determination is made, id. § 8-116(a), and if probable cause exists to support the claim of discrimination or if a Commission-initiated complaint was filed, the matter is referred for a hearing before an administrative law judge ("ALJ"). Id. § 8-116(c). At the hearing, the Commission's "prosecutorial bureau"—the Law Enforcement Bureau—presents the case in support of the complaint. Id. § 8-119(b). The ALJ recommends findings of fact and conclusions of law to the Commission, which issues a final decision. Id. § 8-120(a). In addition to compensatory and other damages, id., the Commission may impose civil penalties. Id. § 8-126(a). "Any complainant, respondent or other person aggrieved by a final order of the commission . . . may obtain judicial review" in state supreme court "within 30 days after the service of the order of the commission." Id. § 8-123(a), (b), (h). The discrimination complaint in this matter was signed by Ondaan and verified by defendant Raj in her capacity as an Assistant Commissioner of the Law Enforcement Bureau. ECF No. 19-3 at 42-43.

[5] The Court considered documents filed by the parties which were relied on or incorporated by reference in plaintiff's Amended Complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (a court ruling on a motion to dismiss may consider documents if "plaintiff has actual notice of all the information in the [defendant's] papers and has relied upon these documents in framing the complaint") (citation and quotation omitted); see also Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016) ("A complaint is deemed to include any written instrument attached to it as an exhibit or . . . documents incorporated in it by reference.") (citation and quotation omitted). Additionally, the Court considers certain factual allegations made in plaintiff's opposition papers. Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion.").
The following documents are annexed to the declaration accompanying defendants' motion to dismiss: Judge Spooner's Report and Recommendation (ECF No. 28-3, "Mackie Decl., Ex. A"); the Commission's Decision and Order (ECF No. 28-4, "Mackie Decl., Ex. B"); Justice Kerrigan's June 28, 2021 decision dismissing plaintiff's state court action (ECF No. 28-5, "Mackie Decl., Ex. C"). Plaintiff references all these documents and attaches several to her Amended Complaint. See ECF No. 19-3 at 72-85 (Judge Spooner's R&R); ECF No. 19-3 at 86-127 (Commission's November 2020 Decision & Order). Plaintiff also attaches several other relevant documents. See ECF No. 19-3 at 37-43 (January 31, 2018 discrimination complaint); ECF No. 19-3 at 35-36 (January 16, 2018 cease and desist letter). The Court refers to the ECF page numbers printed at the top of the plaintiff's documents and the Mackie Declaration.

DAY PERIOD[,]" and "Haitian Bitch You immigrant[.]" Mackie Decl., Ex. A at 4; ECF No. 19-3 at 38-39 ¶¶ 4, 6, 7.

The Commission's discrimination complaint also alleged that plaintiff retaliated against Ondaan by continuing to send harassing messages after the Commission sent plaintiff a cease and desist letter in January 2018, including one message that read in part: "YOU HAD TO LIE TO GET THE REPORT FILED NOW I ANSWER BUT I KNOW YOU WILL BE EVICTED BY HOUSING COURT BY THEN." ECF No. 19-3 at 39-40 ¶¶ 11, 13. Ondaan moved out of plaintiff's property in the fall of 2018. Mackie Decl., Ex. B at 10-11.

The Commission referred the complaint against plaintiff to the Office of Administrative Trials and Hearings ("OATH"), and defendant Spooner, an Administrative Law Judge, conducted a two-day hearing on May 16, 2019 and June 3, 2019. Mackie Decl., Ex. A at 2-3; Am. Compl. at 8. Defendants Knab and Arnaud prosecuted the complaint in their roles as Enforcement Bureau attorneys; plaintiff initially proceeded *pro se*. ECF No. 31-6 at 2 (OATH Hearing Transcript); Am. Compl. at 12. Ondaan testified that plaintiff sent her harassing and intimidating messages threatening to report her to immigration authorities. Judge Spooner found Ondaan's testimony was corroborated by copies of the messages themselves and by phone records from Sprint, plaintiff's phone carrier. Mackie Decl., Ex. A at 5, 7-8.

In his September 12, 2019 Report and Recommendation (the "September 2019 Report"), Judge Spooner determined that plaintiff violated NYCHRL § 8-107(5)(a)(1)(b), which generally prohibits housing discrimination on the basis of a person's immigration status.[6] Id. at 8-9. Judge Spooner considered and rejected plaintiff's argument that she did not send the offending texts, and

---

[6] At the time, § 8-107(5)(a)(1)(b) prohibited housing discrimination based on a person's "alienage or citizenship status"; this language was amended in 2020 to read "immigration or citizenship status." See N.Y.C. Local Law 58 § 9 (2020).

similarly rejected her contention that the messages were "altered" or otherwise inaccurate as conclusory, noting that "she herself offered into evidence additional copies of text messages from Ms. Ondaan's phone received . . . in discovery."[7] Id. at 7. Judge Spooner recommended that plaintiff be required to pay Ms. Ondaan $12,000.00 in emotional distress damages, a civil penalty of $5,000.00 and that plaintiff complete fifty hours of community service. Id. at 12, 14.

Through her then-attorney Jonathan Rosenberg,[8] plaintiff filed post-hearing comments on the September 2019 Report. Mackie Decl., Ex. B at 8; ECF No. 19-3 at 44-57 (plaintiff's comments and objections). On November 24, 2020, the Commission issued its final decision and order (the "November 2020 decision") affirming Judge Spooner's determination that plaintiff violated NYCHRL § 8-107(5)(a) and further found that plaintiff retaliated against Ondaan in violation of NYCHRL § 8-107(7). Mackie Decl., Ex. B at 6. The Commission awarded Ondaan $28,000.00 in emotional distress damages and ordered that plaintiff engage in a restorative justice process or pay a civil penalty of $12,000.00. Id. Plaintiff was also ordered to undergo anti-discrimination training. Id. Plaintiff alleges that defendants Chenitz and Malalis rendered the November 2020 decision,[9] am. compl. at 9, which was served on plaintiff. Mackie Decl., Ex. B at 2.

On March 25, 2021, plaintiff filed a petition in Queens County Supreme Court challenging the Commission's November 2020 decision. Am. Compl. at 12. On June 28, 2021, Justice Kevin Kerrigan dismissed plaintiff's petition as time-barred. Mackie Decl., Ex. C at 3 (citing N.Y.C. Admin. Code § 8-123(h)). Plaintiff's appeal of this dismissal to the Second Department is pending. ECF No. 31 ("Opp.") at 12.

---

[7] Plaintiff offered "an enormous welter of documents[,]" including police records, her entire deposition, and "dark photographs of the exterior of a house," documents which Judge Spooner determined had no "apparent relevance to the issues raised in the complaint." Mackie Decl., Ex. A at 7-8.

[8] Plaintiff asserts that Rosenberg was part of defendants' wrongdoing, and "appears to have a relationship with the staff at Legal Aid Society. . . ." Am. Compl. at 13.

[9] At the time, Chenitz was a Senior Policy Counsel at the Commission, and defendant Malalis was the Commissioner. ECF No. 28, Defs' Mot. at 10, n.11. Malalis signed the November 2020 decision. Mackie Decl., Ex. C at 43.

B.  <u>The Alleged Wrongdoing</u>

Plaintiff alleges defendants in this action have falsely accused her of discrimination to fraudulently secure a green card for defendant Ondaan. Specifically, plaintiff claims that defendant Knab played some role in preparing an immigration application for defendant Ondaan (who plaintiff describes as an "inadmissible person") before joining the Commission. Am. Compl. at 8, 12-13. Plaintiff states that Knab "ran into a roadblock which led to [plaintiff] becoming the sacrificial lamb," <u>id.</u> at 8, and that she has spoken about the immigration fraud with unnamed federal officials, including a USCIS agent who "conducted an interview and informed me of the fraud and directed me that they are aware, and the matter is being investigated." <u>Id.</u> at 9.

Plaintiff alleges that she did not discriminate against Ondaan because she is correct that the "entire matter" revolved around immigration fraud, and that various acts of wrongdoing occurred to cover up this fact. <u>Id.</u> at 8. Plaintiff claims that the "false decision" in the discrimination proceeding "defamed my character and hindered my freedom to a normal life, obtaining employment etc." <u>Id.</u>

According to plaintiff:

- The Sprint records introduced during the administrative hearing "CONFIRMED that the alleged text messages outlined in the complaint were NOT sent from [plaintiff's] phone." <u>Id.</u> .
- Plaintiff was "denied . . . the right to depose the complainant, during trial soon after being entered into evidence the attorneys stole my exhibits." <u>Id.</u> at 12.
- Judge Spooner told her that "he did not write the Report & Recommendation," a fact of which "the Federal Government was aware. . . ."[10] <u>Id.</u> at 8. Judge Spooner resigned "because he too was upset and not in agreeance [sic] with what was being done to me." <u>Id.</u> at 10.

---

[10] Plaintiff relies on a September 16, 2019 e-mail she received from defendant Spooner in which he states: "I write in reply to your e-mails concerning your desire to 'appeal' my report and your concern about redactions in the transcripts. First, you should understand that my report was not a final decision but rather recommended findings for the Commission's review based upon the trial evidence and the parties' submissions. The final decision will be made by the Commission and only after that decision is made will you have a right of appeal. Second, to my knowledge, none of the transcripts or evidence submitted by the parties has been redacted and the entire record was transmitted to the Commission along with the report." ECF No. 19-4 at 50.

- Justice Kerrigan had a "familial relationship" with defendant Chenitz and his dismissal of her state court petition "alone confirms that Judge Kerrigan acted beyond the bounds of the law. . . ." Id. at 13-14.

Plaintiff alleges that, as a result of the Commission proceeding, she was terminated from her job with the City, defamed on the internet, and has suffered emotional distress. Id. at 15. Plaintiff seeks injunctive relief, including an order for defendants to "follow USCIS directives," to "subpoena USCIS records supporting claims/motive," reinstatement of her civil service employment, as well as a million dollars in damages for her pain and suffering. Id. at 15.

## PROCEDURAL HISTORY

Plaintiff filed her complaint on December 13, 2021. ECF No. 1. Defendant New York City Law Department ("Law Department") appeared and filed a motion to dismiss on March 29, 2022. ECF Nos. 8-10. With the Court's leave, plaintiff filed an Amended Complaint on July 15, 2022, ECF No. 19, and defendant's original motion to dismiss was marked withdrawn without prejudice. ECF No. 23. All defendants except for Ondaan now move to dismiss plaintiff's Amended Complaint. ECF No. 28 ("Defs' Mot."). Plaintiff opposes the motion,[11] ECF No. 31 ("Opp."), and defendants have replied. ECF No. 34 ("Reply").

## DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl.

---

[11] Plaintiff filed an "amended reply" on November 22, 2022 which is essentially identical to her initial opposition. ECF No. 33.

Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plaintiff must do more than allege facts that are "merely consistent with" a defendant's liability or "speculative," Twombly, 550 U.S. at 555–56; they must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). If a plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

In deciding a motion to dismiss, the Court has the "obligation to construe *pro se* complaints liberally, even as [it] examine[s] such complaints for factual allegations sufficient to meet the plausibility requirement." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted). "It is well-established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Meadows v. United Servs., Inc., 963 F.3d 240, 243 (2d Cir. 2020) (citations omitted). In addition to the complaint, the Court may consider documents attached to the complaint, documents incorporated by reference therein, or documents that the complaint "relies heavily upon" and are "integral" to the complaint, even if not incorporated by reference. Chambers, 282 F.3d at 152–53. "If the allegations in the complaint are contradicted by attached documents, the court need not accept the truth of the allegations." Luck v. Westchester Med. Ctr., No. 17-CV-9110, 2019 WL 416333, at *5 (S.D.N.Y. Feb. 1, 2019) (collecting cases).[12] The Court may also consider "factual allegations made by a *pro se* party in his papers opposing the motion" to dismiss. Antrobus v. City of New York, No. 19-CV-6277, 2021 WL 848786, at *3 (E.D.N.Y. Mar. 5, 2021) (citing Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

---

[12] The Clerk of Court is directed to send plaintiff the attached copies of all the unreported cases cited herein.

## I.  Younger Abstention[13]

Defendants argue that plaintiff's claims for injunctive relief are barred by the Younger abstention doctrine. Defs' Mot. at 15-18 (quoting Glatzer v. Barone, 614 F. Supp. 2d 450, 457 (S.D.N.Y. 2009)); Younger v. Harris, 401 U.S. 37 (1971). Under Younger, federal courts are prohibited from interfering with certain ongoing state proceedings. Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 100 (2d Cir. 2004); Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003). The Supreme Court has clarified that courts should abstain under Younger in the following three circumstances: (1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72-7 (2013); Schorr v. DoPico, 686 F. App'x 34, 36 (2d Cir. 2017) (summary order).

Courts may also consider three additional factors articulated by Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982), before applying Younger abstention: "[w]hether 'there is (1) an ongoing state judicial proceeding that (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges.'" Cavanaugh v. Geballe, 28 F.4th 428, 432 (2d Cir. 2022) (quoting Sprint Commc'ns, Inc., 571 U.S. at 81) (alteration omitted); see also Lowell v. Vermont Dep't of Child. & Fams., 835 F. App'x 637, 639 (2d Cir. 2020), as amended (Dec. 15, 2020) (summary order) ("[A]fter applying the categorical Sprint approach, this court will consider three additional, non-dispositive factors to determine whether abstention is appropriate.").

---

[13] Defendants bring their motions to dismiss under Rule 12(b)(6), however defendants' Younger argument implicates subject matter jurisdiction under Rule 12(b)(1). See Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP, No. 20-CV-9784, 2022 WL 901660, at *16 n.29 (S.D.N.Y. Mar. 28, 2022) (construing motion to dismiss raising Younger abstention as brought under 12(b)(1)). "The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical." Doe v. State Univ. of New York Purchase Coll., 617 F. Supp. 3d 195, 202 (S.D.N.Y. 2022) (quotation and citation omitted).

Defendants assert that <u>Younger</u> abstention is "mandatory" if the <u>Middlesex</u> factors are met. Defs' Mot. at 16. But these factors "do not by themselves tell us whether the federal court should abstain." <u>Cavanaugh</u>, 28 F.4th at 435. Rather, the <u>Middlesex</u> factors are considerations that, while important, are subordinate to the threshold determination of whether a proceeding falls within one of the three "exceptional circumstances" identified by the Supreme Court in <u>Sprint</u>. <u>Id.</u> at 434-35. Plaintiff asserts that the Court should not abstain because her claims fall within the exception to <u>Younger</u> reserved for cases where there is a showing of "bad faith, harassment, or some other extraordinary circumstance." <u>Middlesex Cnty. Ethics Comm.</u>, 457 U.S. at 435; Opp. at 19-20.

<u>Younger</u> abstention would be warranted "only to the extent Plaintiff[] seek[s] injunctive relief in the instant federal proceeding." <u>Homere v. Inc. Vill. of Hempstead</u>, 322 F. Supp. 3d 353, 368 (E.D.N.Y. 2018). As defendants note, it is "not clear" what specific injunctive relief plaintiff seeks. Defs' Mot. at 14. Under these circumstances, and given defendants' motion to dismiss plaintiff's Amended Complaint for failure to state a claim, the Court should consider plaintiff's Amended Complaint on the merits. <u>See</u> <u>Max v. Lissner</u>, No. 22-CV-5070, 2023 WL 2346365, at *7 (S.D.N.Y. Mar. 3, 2023) (proceeding to the merits notwithstanding that plaintiff's claims "may very well fit within one of the abstention doctrines" where "it is apparent that the Complaint fails to state a claim"); <u>Homere</u>, 322 F. Supp. 3d at 368.

## II.    Failure to State a Claim

### A.    <u>Fourteenth Amendment Due Process</u>[14]

Plaintiff's Amended Complaint alleges that defendants denied her due process under the Fourteenth Amendment. "[A]nalysis of procedural-due-process claims ordinarily proceeds in two

---

[14] "Because the Fifth Amendment Due Process Clause only applies to actions taken by the federal government and not by state or municipal officials," plaintiff's Fifth Amendment claim should be dismissed. <u>Kimbrough v. Town of Dewitt Police Dep't</u>, No. 08-CV-03, 2010 WL 3724017, at *2 n.4 (N.D.N.Y. Sept. 15, 2010) (citing <u>Pub. Utils. Comm'n of D.C. v. Pollak</u>, 343 U.S. 451, 461 (1952)).

steps. First, [the Court] ask[s] whether there exists a property interest of which a person has been deprived." Oneida Indian Nation of New York v. Madison Cnty., 665 F.3d 408, 427–28 (2d Cir. 2011) (quotation and citation omitted). If such a property interest exists, the Court then asks "whether the procedures followed by the State were constitutionally sufficient." Id. at 428 (quotation and citation omitted).

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quotation and citation omitted). In Rosu v. City of New York, the Second Circuit held that the Commission's procedure for investigating a complaint of discrimination, "which includes administrative and judicial review, satisfies due process." 742 F.3d 523, 528 (2d Cir. 2014). The Constitution guarantees an individual accused by the Commission of violating the NYCHRL to process, not to the outcome he or she thinks is correct. See Rudow v. City of New York, 822 F.2d 324, 329-30 (2d Cir. 1987) (finding, in the context of a Commission proceeding, that the "state has issued no guarantee that [plaintiff] would be found innocent; it has only guaranteed that certain procedures would be followed in the [Commission] prosecution.").

The discrimination proceeding against plaintiff satisfied due process by following NYCHRL procedures. There was an administrative hearing, at which plaintiff could present evidence and cross-examine witnesses, a final Commission order based on a review of the ALJ's findings and recommendations, and an opportunity for plaintiff to seek judicial review of the Commission's decision in state court. See N.Y.C. Admin. Code §§ 8-119 (hearing); 8-120 (Commission decision and order); 8-123 (judicial review). Throughout this process, plaintiff raised many of the same issues she presents now: for instance, that the Sprint records prove her innocence and that she was denied due process. See, e.g., ECF No. 19-3 at 44-57 (plaintiff's objections to the

11

September 2019 Report). The Commission procedures afforded plaintiff a meaningful opportunity to be heard and meaningful review. Indeed, plaintiff received *more* process than what the Second Circuit has deemed adequate under similar circumstances. See Rosu, 742 F.3d at 528; see also Union Square Supply Inc. v. De Blasio, 572 F. Supp. 3d 15, 24 (S.D.N.Y. 2021) (holding that predeprivation administrative hearing followed by a post-deprivation Article 78 proceeding satisfies due process).

Liberally construed, plaintiff's Amended Complaint alleges that defendants deprived her of a property interest, not through established procedures that were constitutionally inadequate, but by engaging in "random and unauthorized" acts of misconduct that culminated in the Commission's November 2020 decision. Plaintiff's claim fails, however, because plaintiff had the opportunity to seek review of the Commission's decision in state court.[15]

The Second Circuit has "held that post-deprivation Article 78 proceedings are 'adequate for due process purposes' when the deprivation was caused by a 'random and arbitrary' act." Tang v. Grossman, No. 22-464, 2023 WL 2229366, at *2 (2d Cir. Feb. 27, 2023) (quoting Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 881 (2d Cir. 1996)) (summary order); see also Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy."). As already noted, the NYCHRL provides that any party "aggrieved by a final order of the commission" may seek judicial review in state court within thirty days of service of the Commission's order. N.Y.C. Admin. Code § 8-123(a), (h). Although this mechanism of review is distinct from an Article 78

---

[15] Plaintiff's Amended Complaint fails to specify how any individual denied her process. Plaintiff alleges that defendants Knab and Arnaud "stole" exhibits, specifically NYPD Police Reports, and grabbed her hand during her deposition. Am. Compl. at 12. But these allegations do not demonstrate plaintiff was denied due process.

proceeding, see Maloff v. City Commn. on Human Rights, 45 A.D.2d 834, 834, (App. Div. 1st Dep't 1974), it similarly affords a "hearing and a means of redress" for plaintiff. HANAC, 101 F.3d at 881; see also Automatic Meter Reading Corp. v. New York City, 114 N.Y.S.3d 575 (N.Y. Sup. Ct. 2019) (hearing due process challenge to a Commission decision). That plaintiff may have waited too long to file her state court appeal of the Commission's decision does not "resuscitate" her due process claim—what matters is she had an opportunity to challenge that decision. HANAC, 101 F.3d at 881. Plaintiff's allegation that Justice Kerrigan, who dismissed her state court petition, had an unspecified "personal relationship with Zoey Chenitz" which "led to a bias decision" is conclusory. Opp. at 11. Plaintiff's Amended Complaint fails to state a claim for a violation of her due process rights. Therefore, defendants' motion to dismiss plaintiff's Amended Complaint should be granted.

B.  Remaining Claims

i.    Defamation under the First, Eighth, and Fourteenth Amendments

Plaintiff brings claims under the First and Eighth Amendment arising from defendants' allegedly defamatory statements related to her Commission proceeding. See Am. Compl. at 8; Opp. at 17. Plaintiff also alleges defendants violated her rights under the Fourteenth Amendment. Opp. at 19. Plaintiff asserts several defendants "publicly malicious [sic] with knowledge falsely spoke with CNN News, Wall Street Journal, Columbia University, NYC City Counsel, and many others leading to all of this false information to appear in the google search engine[,]" and that this alleged defamation of her "character with knowledge that [I] am innocent is beyond excessive cruel and unusual punishment[.]" Opp. at 17. Plaintiff alleges defendants' false statements "hindered [plaintiff's] freedom to a normal life, obtaining employment, etc." Am. Compl. at 8.

Defendants' allegedly defamatory statements—while deeply troubling to plaintiff—do not rise to the level of a constitutional claim that can be heard in federal court. "Defamation . . . is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action." Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) (citation omitted). Plaintiff's reputation may have been harmed by the outcome of the Commission proceeding and attendant publicity, but "[t]he Supreme Court has made clear that there is no constitutionally protected property or liberty interest in one's reputation." Mullahey v. Zurlo, No. 16-CV-401, 2017 WL 530523, at *4 (N.D.N.Y. Feb. 9, 2017) (citations omitted); see Paul v. Davis, 424 U.S. 693, 702 (1976) (finding there is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty"); Rudow, 822 F.2d at 330 (noting that the "collateral consequences of [plaintiff] being adjudged guilty of sexual harassment do not abridge a property right" that, standing alone, gives rise to a procedural due process claim).[16] Defendants'

_____

[16] An employee can "'invoke the protections of the Due Process Clause' where that employee has suffered a loss of reputation 'coupled with the deprivation of a more tangible interest, such as government employment.'" Segal v. City of New York, 459 F.3d 207, 212 (2d Cir. 2006) (quoting Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004)). This so-called "stigma-plus claim" requires a plaintiff to show, first, that the "government made stigmatizing statements about [plaintiff]—statements that call into question the plaintiff's good name, reputation, honor, or integrity." Id. at 212 (quotation, citation, and alteration omitted). "Second, a plaintiff must prove these stigmatizing statements were made public." Id. (quotation and citation omitted). "Third, the plaintiff must show that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." Id. (quotation and citation omitted).

Here, plaintiff claims she lost her job with the New York City Office of Chief Medical Examiner around July 2019 due to the discrimination proceeding. Opp. at 6 ("Carmalyn Malalis, Zoey Chenitz, Sapna Raj, Holly Ondaan, CCHR publicly malicious with knowledge falsely spoke with CNN News, Wall Street Journal, Columbia University, NYC City Counsel, and many others. . ."). However, among other things, plaintiff does not allege the contents of defendants' defamatory statements to the press. See Waronker v. Hempstead Union Free Sch. Dist., 788 F. App'x 788, 794 (2d Cir. 2019) (summary order) (holding plaintiff failed to state a stigma-plus claim because the complaint was "devoid of any specific statements made about [plaintiff], much less ones capable of supporting a stigma-plus claim"). Further, plaintiff was terminated from her job around July 2019, and the only specific date she provides for any of the allegedly defamatory statements made to the press is September 20, 2020—more than a year later. Opp. at 6. Given this length of time between the alleged defamatory statements and her termination, the two do not, "to a reasonable observer, appear connected." Velez v. Levy, 401 F.3d 75, 89 (2d Cir. 2005); see also Martz v. Inc. Vill. of Valley Stream, 22 F.3d 26, 32 (2d Cir. 1994) (holding plaintiff failed to show the "necessary nexus between the defamation and the time of termination" where five months separated plaintiff's termination and publication of the statements at issue).

motion to dismiss plaintiff's claims that defendants violated her constitutional rights by making allegedly defamatory statements should therefore be granted.

   *ii.* *Sixth and Seventh Amendments*

  Plaintiff's Amended Complaint references the Seventh Amendment, and she appears to argue that she was denied the right to a jury trial. See Opp. at 16-17. However, "the Seventh Amendment . . . does not apply to the States." GTFM, LLC v. TKN Sales, Inc., 257 F.3d 235, 245 (2d Cir. 2001). As plaintiff had no right to a jury trial in the Commission proceeding, plaintiff's amended complaint fails to state a claim.

  Plaintiff also asserts that her Sixth Amendment rights were violated because she was denied the right to "depose" defendant Ondaan, am. compl. at 12, but the Sixth Amendment does not apply to the underlying administrative process, which was civil—not criminal—in nature. "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" Crawford v. Washington, 541 U.S. 36, 42 (2004). "The Sixth Amendment, by its own text, is limited to 'criminal prosecutions.'" Gerena v. New York State Off. of Mental Health, No. 11-CV-4450, 2018 WL 11466739, at *9 (E.D.N.Y. Feb. 27, 2018) (holding Sixth Amendment's Confrontation Clause does not apply to civil commitment proceeding); Kloth-Zanard v. Malloy, No. 15-CV-124, 2016 WL 5661977, at *5 (D. Conn. Sept. 29, 2016) (holding Sixth Amendment does not apply to civil administrative hearing). Further, plaintiff appears to confuse a deposition, which is part of the pre-trial discovery process, with the right to confront one's accuser *at trial*. Even if the Confrontation Clause applied to this case, plaintiff was afforded the opportunity to cross-examine defendant Ondaan during the OATH hearing, as demonstrated by the transcript she attaches to her opposition papers. See ECF No. 31-6 at 113-63.

Defendants' motion to dismiss plaintiff's claims under the First, Sixth, Seventh, Eighth,[17] and Fourteenth Amendments for failure to state a claim should be granted.

C.  Malicious Abuse of Process

Liberally construed, plaintiff's Amended Complaint raises a malicious abuse of process claim. "In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quotation and citation omitted).

Plaintiff offers no facts to support her claim that defendants used the Commission proceeding as part of an immigration fraud scheme, except she alleges that because Ondaan is "inadmissible" but nevertheless obtained a green card, the Commission proceeding must have played some role. Opp. at 8; see Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation, No. 06-CV-1260, 2009 WL 4547792, at *8 (E.D.N.Y. Dec. 1, 2009) (dismissing abuse of process claim because there was no allegation as to "how" the process at issue was used to "obtain a collateral objective"). Plaintiff therefore fails to plausibly allege that the Commission proceeding was an attempt to "coerce [her] into doing something other than what the process necessitates." Folk v. City of New York, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) (holding plaintiff failed to plausibly allege a collateral objective where all the allegations of abuse of process "directly relate to the

---

[17] "The Eighth Amendment protects prisoners from 'cruel and unusual punishment.'" Romano v. Howarth, 998 F.2d 101, 104 (2d Cir. 1993) (citation omitted). It applies only to "those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297 (1991).

To the extent plaintiff's Amended Complaint could be construed as raising a claim under the Eighth Amendment's Excessive Fines Clause, plaintiff fails to plausibly allege that the civil penalty imposed by the Commission is "grossly disproportional to the gravity of [her] offense," Union Square Supply Inc., 572 F. Supp. 3d at 25 (quoting New York v. United Parcel Serv., Inc., 942 F.3d 554, 599 n.36 (2d Cir. 2019)), particularly because the civil penalty here would be set aside if plaintiff participated in a restorative justice program. Mackie Decl. Ex B at 42.

Individual Defendants' roles as police officers and the criminal prosecution") (quotation and citation omitted); O'Brien v. Alexander, 898 F. Supp. 162, 168 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 1479 (2d Cir. 1996) (holding allegation that process was issued to abuse and harass insufficient to state a claim for abuse of process). Defendants' motion to dismiss plaintiff's claim for malicious abuse of process should be granted.[18]

### III.    The Law Department and Commission are Not Suable Entities

Defendants' motion to dismiss plaintiff's claims against the Law Department and Commission should also be granted because those entities cannot be sued. Under the New York City Charter, "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter § 396. This provision "has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued." Ximines v. George Wingate High Sch., 516 F.3d 156, 160 (2d Cir. 2008); see also Nnebe v. Daus, 644 F.3d 147, 158 n.6 (2d Cir. 2011) ("It is well settled in this Court that, as a general matter, agencies of New York City are not suable entities in § 1983 actions.").

The Law Department and the Commission are departments of New York City. See N.Y.C. Charter §§ 391 (law department); 902 (commission). They are not suable entities. Dublin v. New York City Law Dep't, No. 10-CV-2971, 2012 WL 4471306, at *2 (S.D.N.Y. Sept. 26, 2012) (holding Law Department is not suable); Rosu v. City of New York, No. 11-CV-5437, 2012 WL 6582534, at *8 (S.D.N.Y. Dec. 13, 2012), *aff'd*, 742 F.3d 523 (2d Cir. 2014) (holding same for New York City Commission on Human Rights). Defendants' motion to dismiss plaintiff's claims against the Law Department and Commission defendants should therefore be granted.

---

[18] Although defendants raise qualified immunity, the Court need not address this ground for dismissal given plaintiff's failure to state a claim.

## IV.    Municipal Liability

To establish a constitutional violation under § 1983, "a plaintiff must show that: (1) the defendants acted under color of state law; and (2) the defendants' actions resulted in a deprivation of plaintiff's constitutional rights." Bhatia v. Yale Sch. of Med., 347 F. App'x 663, 664–65 (2d Cir. 2009) (summary order). To hold a municipal entity liable under § 1983—as plaintiff seeks to do here—a plaintiff must show that an unconstitutional policy or custom of the municipality caused the injury. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978); Friedman v. New York City Admin. for Children's Servs., 502 F. App'x 23, 27 (2d Cir. 2012) (summary order). "In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights." Wrobleski v. City of New York, No. 18-CV-8208, 2018 WL 10604749, at *4 (S.D.N.Y. Nov. 5, 2018) (citation omitted). "[I]t is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing." Johnson v. Alma, 19-CV-8093, 2019 WL 5260824, at *3 (S.D.N.Y. Oct. 15, 2018).

Here, plaintiff's Amended Complaint fails to state a plausible claim that her constitutional rights were violated. Plaintiff's Amended Complaint further fails to identify any officially adopted policy, custom, or practice that led to the violation of her constitutional rights. Therefore, defendants' motion to dismiss plaintiff's claims against the City of New York should be granted.

V.     **Absolute Immunity**[19]

    a.  Defendant Spooner

"A long line of [Supreme Court] precedents acknowledges that, generally, a judge is immune from a suit for money damages." Mireles v. Waco, 502 U.S. 9, 9 (1991) "Judicial immunity is conferred in order to [ensure] independent exercise of judicial authority without fear of facing suit in a personal capacity." Merced v. Ponte, No. 17-CV-4918, 2019 WL 1208791, at *12 (E.D.N.Y. Mar. 13, 2019) (citing Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009)); see also Bradley v. Fisher, 80 U.S. 335, 347 (1871) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."). "[J]udicial immunity is not overcome by allegations of bad faith or malice. . . ." Mireles, 502 U.S. at 11 (1991). Rather, judicial "immunity may be overcome only if the court is alleged to have taken non-judicial actions or if the judicial actions taken were 'in the complete absence of all jurisdiction.'" Bey v. City of New York Dep't of Fin., No. 12-CV-364, 2012 WL 441258, at *2 (E.D.N.Y. Feb. 10, 2012) (quoting Mireles, 502 U.S. at 11-12).

This absolute immunity "extends to administrative officials performing functions closely associated with the judicial process," including administrative law judges, "because the role of the hearing examiner or administrative law judge is 'functionally comparable' to that of a judge." Merced, 2019 WL 1208791, at *12 (quoting Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999)); see also Bey, 2012 WL 441258, at *2 (dismissing plaintiff's claims against ALJ defendants under the doctrine of absolute immunity).

---

[19] Defendants inexplicably raise this argument in a single sentence. Defs' Mot. at 8.

Here, plaintiff claims defendant Spooner erred when he failed to credit the records that she asserts clearly prove her innocence. This action was taken by Spooner in his judicial capacity and plaintiff's claims are therefore barred by absolute immunity. See Merced, 2019 WL 1208791, at *13 (holding challenge to defendant Spooner's findings "made pursuant to his adjudicative role at the OATH hearing" is barred by absolute immunity); Bey, 2012 WL 441258, at *2 ("Any adjudicatory function by the ALJs, if alleged, would clearly be judicial acts performed within their judicial capacities, and the ALJs would be protected by absolute immunity."); Durant v. New York City Hous. Auth., No. 12-CV-937, 2012 WL 928343, at *2 (E.D.N.Y. Mar. 19, 2012) ("Here, Plaintiffs['] allegations against [defendant] concern his official actions in ruling on witness testimony and in issuing an official decision. These are clearly judicial acts that are protected by absolute immunity.").

      b.  <u>Defendants Chenitz and Malalis</u>

Plaintiff's claims against defendants Chenitz and Malalis are similarly barred by absolute immunity. Plaintiff alleges Chenitz and Malalis violated her constitutional rights "by rendering a decision/order of guilt," namely the Commission's November 2020 decision. Am. Compl. at 9. Defendants issued a decision after reviewing the hearing record, Judge Spooner's report, and plaintiff's objections. As Defendants Chenitz and Malalis acted in a judicial capacity, they are entitled to judicial immunity. See Montero, 171 F.3d at 761 (noting that "Courts take a functional approach" to determine whether a defendant is entitled to judicial immunity "for a particular act"); Merced, 2019 WL 1208791, at *13 (holding claims against municipal commissioner for terminating plaintiff based on ALJ's report and recommendation are barred by judicial immunity).

c.   Defendants Arnaud, Knab, Raj

Plaintiff's claims against Arnaud, Knab and Raj are barred by absolute prosecutorial immunity, which is related in scope and purpose to absolute judicial immunity. "A state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005) (internal quotation and citation omitted). Absolute immunity extends "to agency attorneys conducting a trial and presenting evidence on the record to an administrative trier of fact." Rudow, 822 F.2d at 327; see also Cornejo v. Bell, 592 F.3d 121, 127–28 (2d Cir. 2010) ("This Court has previously extended absolute immunity to state and federal officials initiating noncriminal proceedings such as administrative proceedings and civil litigation.").

"[P]rosecutors retain absolute immunity even when a plaintiff alleges the 'knowing use of perjured testimony' or the 'deliberate withholding of exculpatory information.'" Baron v. Lissade, No. 19-CV-6256, 2021 WL 4407836, at *7 (E.D.N.Y. Sept. 27, 2021) (quoting Shmueli, 424 F.3d at 237). "The rationale for conferring absolute immunity in such circumstances is that '[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.'" Shmueli, 424 F.3d at 237 (quoting Imbler v. Pachtman, 424 U.S. 409, 424-25 (1976)).

Knab, Arnaud, and Raj are entitled to absolute prosecutorial immunity for "activities that can fairly be characterized as closely associated with the conduct of litigation." Baron, 2021 WL 4407836, at *7 (quoting Barrett v. United States, 798 F.2d 565, 572 (2d Cir. 1986)); see also Rudow, 822 F.2d at 328 (extending absolute immunity to Commission attorney). Plaintiff's claims against defendants Knab, Arnaud, and Raj arising from actions taken after the filing of the

discrimination complaint and which were taken to prosecute plaintiff's violation of the NYCHRL[20] are barred by absolute immunity. <u>Baron</u>, 2021 WL 4407836, at *7. As such, defendants' motion to dismiss these claims should be granted.

## VI.    Supplemental Jurisdiction

The Court should decline to exercise supplemental jurisdiction over plaintiff's state-law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction[.]"); <u>Valencia ex rel. Franco v. Lee</u>, 316 F.3d 299, 305 (2d Cir. 2003) (citing 28 U.S.C. § 1367(c)(3)) (federal court should decline to exercise jurisdiction over state-law claims where all federal-law claims are dismissed). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point towards declining to exercise jurisdiction over the remaining state law claims." <u>Carnegie–Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).

## VII.    Leave to Amend

"Ordinarily, *pro se* plaintiffs are granted opportunities to amend their complaints freely; however, courts need not afford plaintiffs an opportunity to amend where it is clear that any attempt to amend the complaint would be futile." <u>Kimmel v. New York State Assembly</u>, No. 20-CV-1074, 2020 WL 6273975, at *3 (E.D.N.Y. Oct. 26, 2020) (citing <u>Cruz v. Gomez</u>, 202 F.3d 593, 597–98 (2d Cir. 2000)). Here, plaintiff was afforded the opportunity to amend her complaint after she was put on notice of the deficiencies in her original complaint. <u>See</u> ECF Nos. 8-10. Plaintiff's Amended

---

[20] The Enforcement Bureau prosecuted this matter after the Commission initiated the complaint.

Complaint fails to state a claim upon which relief can be granted and plaintiff should not be permitted to amend again.

## CONCLUSION

Accordingly, it is respectfully recommended that defendants' motion to dismiss plaintiff's Amended Complaint should be granted. The Court should decline to exercise jurisdiction over any state law claims and any state law claims should be dismissed without prejudice.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985). SO ORDERED.

_____ /S/ _____
LOIS BLOOM
United States Magistrate Judge

Dated:  June 12, 2023
        Brooklyn, New York